UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
**XUNHUI YU**,                                                 :
                                                               :
                                Plaintiff,   :   **MEMORANDUM DECISION AND ORDER**
                                                               :
                – against –                        :   24-CV-3902 (AMD) (JRC)
                                                               :
**GUANG JUN GAO** and **LAW OFFICES OF GUANG JUN GAO, LLP**,   :
                                                               :
                             Defendants.  :
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

       Before the Court is the defendants' motion to dismiss. For the reasons explained below, the motion is denied.

       The plaintiff, proceeding *pro se*, filed this lawsuit against his former attorney, Guang Jun Gao, and Gao's law firm, Law Offices of Guang Jun Gao, LLP on May 29, 2024. He alleges that the defendants withheld documents from his asylum application and unilaterally terminated the attorney-client relationship without his consent. In August 2022, the plaintiff sued the defendants based on the same facts in New York state court. In that case, the plaintiff brought claims for breach of fiduciary duty and conversion; in this action, he asserts claims for breach of contract, breach of fiduciary duty, and negligence. The state court case is ongoing.

       The defendants ask the Court to dismiss or stay this action in deference to the state action, pursuant to the *Colorado River* abstention doctrine. *See Colorado River Water Conservation Dist. v. United States* (*Colorado River*)*,* 424 U.S. 800 (1976). As explained below, the defendant's motion is denied.

# BACKGROUND

## I. Factual Background

On April 17, 2019, the plaintiff retained the defendants to represent him in connection with his applications for asylum, an Employment Authorization Document ("EAD"), and a social security number ("SSN").  (ECF No. 1 ¶ 5 (Statement of the Case).)  He paid the defendants $3,000 for these services.  (*Id.*)

On July 23, 2020, the plaintiff's EAD application was approved.  According to the plaintiff, the defendants "forged Plaintiff's signature on the EAD application" and had it mailed to their office.  (*Id.* ¶ 6.)  The defendants withheld the EAD card from the plaintiff, and charged him an additional $3,000.  (*Id.*)  In February 2021, the plaintiff granted "full power of attorney" to Changhe Cheng, "a legal practioner from a family practicing law for three generations," and asked Cheng to "retrieve the withheld documents" from the defendants, who refused to turn them over.  (*Id.* ¶ 7.)

## II. Ongoing State Court Action

In August 2022, the plaintiff, proceeding *pro se*, sued the defendants in the New York State Supreme Court, Queens County, for breach of fiduciary duty and conversion.  (ECF No. 11-3 (State Action Complaint); ECF No. 11-5 (State Action First Motion to Amend Complaint); ECF No. 11-6 (State Action Second Motion to Amend Complaint).)  Later that month, the defendants terminated their attorney-client relationship with the plaintiff without the plaintiff's consent; they did not give him the EAD card or the "asylum-related documents."  (ECF No. 1 ¶ 8 (Statement of the Case).)

The defendants moved to dismiss the state court complaint in August 24, 2022.  (ECF No. 11-8 (State Action Motion to Dismiss).)  On September 26, 2022, the plaintiff moved for summary judgment, which the state court denied as premature because discovery had not

commenced.  (ECF No. 11-11 at 2 (State Action Order Denying Summary Judgment Motion).)  On October 23, 2023, the defendants deposed the plaintiff, but he refused to answer the majority of defense counsel's questions.  (*See, e.g.*, ECF No. 11-15, Deposition Transcript of Xunhui Xu at 52:21-24 ("Q. Sir, did you ever hire defendant to file the EAD card application on your behalf, yes or no or you don't know? A. Irrelevant. I refuse to answer.").)  At around the same time, Changhe Cheng went to the defendants' office to get the asylum documents and the $3,000 payment; the plaintiff claims that Cheng "was beaten by Defendant's staff."  (ECF No. 1 ¶ 9 (Statement of the Case).)

In the state court complaint, the plaintiff claimed that the defendants unlawfully withheld his EAD card.  (ECF No. 11-3 ¶ 1.)  The plaintiff has twice moved to amend his complaint, seeking to add new claims and new facts, including the defendants' termination of the attorney-client relationship and the defendants' refusal to give Cheng the asylum documents.[1]  In the proposed second amended complaint in the state action, the plaintiff seeks an injunction requiring the defendants to give him his EAD card and $5,600,000 in compensatory and punitive damages for lost employment and health benefits.  (ECF No. 11-6 ¶ 32 (State Action Proposed Second Amended Complaint, Statement of the Case).)

---

[1] On April 8, 2024, the state court granted in part and denied in part the plaintiff's first motion to amend the complaint.  The court denied the plaintiff's request to add a legal malpractice claim and new factual allegations because he "fail[ed] to annex any documents evidencing" these amendments.  (ECF No. 11-7 at 2 (State Action Order on First Motion to Amend Complaint).)  For example, the state court denied the plaintiff's motion to include this statement in the "Introduction":  "The central issue is Gao's illegal withholding of Plaintiff's EAD card for over three years and improper withdrawal as counsel, causing financial harm and employment hindrances, and deprived Plaintiff of medical rights."  (*Id.* at 2; ECF No. 11-5 ¶ 10.)  A month later, the plaintiff moved again to amend the complaint to add claims of legal malpractice and intentional infliction of emotional distress and expand the time period to include the defendants' termination of the attorney-client relationship and subsequent events.  (ECF No. 11-6 (State Action Second Motion to Amend Complaint).)  This motion is pending.

3

### III. Procedural Background of this Action

The plaintiff brought this action against the defendants in May 2024. (ECF No. 1.) The plaintiff asserts claims for breach of contract, breach of fiduciary duty, and negligence. (*Id.*) The defendants move to dismiss this action pursuant to the *Colorado River* abstention doctrine, or to stay it pending the outcome of the state court case. (ECF No. 11.)

## LEGAL STANDARD

"[F]ederal courts have a virtually unflagging obligation to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). However, "federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 720–21 (1996) (citation omitted). "Whether to abstain is within the sound discretion of the district court." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985). Because abstention is "an exception to a court's normal duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998). Under the *Colorado River* doctrine, a district court may decline to exercise jurisdiction in exceptional circumstances "due to the presence of a concurrent state proceeding" and "for reasons of wise judicial administration." *Colorado River*, 424 U.S. at 818.

"A motion to dismiss based on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure." *JPMorgan Chase Bank, N.A. v. Avara US Holdings LLC*, No. 23-CV-7145, 2024 WL 709068, at *4 (S.D.N.Y. Feb. 21, 2024) (citation omitted). Although "the Court generally must accept the material factual allegations in the complaint as true," "the Court does not draw all

4

reasonable inferences in the plaintiff's favor" when determining whether to dismiss under *Colorado River*. *Id*. (citing *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). "The court may consider affidavits and other materials beyond the pleadings but cannot rely on conclusory or hearsay statements contained in the affidavits." *Pike Co., Inc. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 385 (W.D.N.Y. 2018) (citation omitted). "Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings to determine whether jurisdiction exists," while being "guided by that body of decisional law that has developed under Rule 56." *JPMorgan Chase Bank, N.A.*, 2024 WL 709068, at *4 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). Moreover, because the plaintiff is representing himself, the Court must construe his submissions "liberally" and interpret them "to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

      The plaintiff includes the following exhibits with his federal complaint: (1) an April 17, 2019 receipt for a $3,000 payment for the defendants' legal services; (2) an April 17, 2019 retainer agreement; (3) documents relating to his EAD application; (4) an unsigned document dated February 7, 2021 entitled "The power of attorney;" and (5) an August 29, 2022 notice from U.S. Citizenship and Immigration Services that the defendants were no longer counsel of record for the plaintiff's asylum application. The defendants include with their motion documents relating to the plaintiff's asylum application. Because the plaintiff incorporates these documents by reference in his complaint, the Court considers them in deciding this motion. *See Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007) (courts considering motions to dismiss may look to extraneous documents incorporated by reference into the complaint) (citation omitted); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (courts considering motions to dismiss are not necessarily limited to the face of the complaint when "the

5

incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls"). The Court takes judicial notice of the complaint and other filings in the state action, which are matters of public record. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 397–98 (2d Cir. 2006).[2]

## DISCUSSION

The defendants argue that the Court should abstain from exercising jurisdiction over the plaintiff's claims pursuant to *Colorado River* because of the pending state action.

### I.    Whether the Actions Are Parallel

"In deciding whether to abstain under [the] *Colorado River* [doctrine], a district court must first determine whether the federal and state court cases are parallel." *U.S. Bank Nat'l Ass'n as Trustee Bank of Am., N.A. v. E. Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020); *see also Dittmer*, 146 F.3d at 118 ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*.").

"Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer*, 146 F.3d at 118 (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir. 1988) (internal quotation marks omitted)). "Complete

---

[2] The Court does not consider Changhe Cheng's affidavit (ECF No. 1 at 19) because it is not notarized or made under penalty of perjury. *See Jean v. Acme Bus Corp.*, No. 08-CV-4885, 2012 WL 4171226, at *5 (E.D.N.Y. Sept. 19, 2012) (observing that, to be admissible, "an affidavit must be sworn to before an officer authorized to administer oaths, such as a notary public" or, if it is unsworn, it must be "made under penalty of perjury" and "include[] language in substantially the same form as 'I declare (or certify, verify, or state) that the foregoing is true and correct' followed by a signature and date of execution." (citations omitted)). Nor does the Court consider the sworn affidavit by Yandong Liu, who met the plaintiff "in 2019 when [Liu] was working as a decoration project manager." (*Id.* at 20.) The statements are not based upon personal knowledge. The Court does not consider the declaration attached to the defendant's motion for the same reason. *See Kamen*, 791 F.2d at 1011 (holding that it was improper for district court to consider "conclusory and hearsay" statements in an attorney affidavit where the statements were not based upon personal knowledge); *Prudential Sec. Inc. v. Arain*, 930 F. Supp. 151, 155 (S.D.N.Y. 1996) (finding inadmissible an affidavit opining that a brokerage firm routinely required execution of arbitration agreements as condition of opening an account, where affiant had no personal knowledge of firm's practices).

identity of . . . claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." *Pappas Harris Cap., LLC v. Bregal Partners, L.P.*, No. 20-CV-6911, 2021 WL 3173429, at *3 (S.D.N.Y. July 27, 2021) (citation omitted). "For that reason, federal courts have abstained when faced with a federal case that includes a claim or claims not in the state case, when the state case claims involve the same factual allegations as those at issue in the federal case." *Id.* (citations omitted).

In this case, there is no dispute that the parties are identical. (ECF No. 11-2 at 12; ECF No. 12 at 2.) The defendants argue that the federal and state actions are parallel because they arise out of the same dispute — the defendants' legal services to the plaintiff under the April 17, 2019 retainer agreement. (ECF No. 11-2 at 13.) The plaintiff, on the other hand, claims that the actions are different. He says that the state action arises out of the defendants' withholding of the EAD card, while the federal action concerns the defendants' "unilateral termination" of the attorney-client relationship and withholding of "essential asylum-related documents." (ECF No. 12 ¶ 5.) The plaintiff also argues that he makes different claims in the state action "primarily rooted in tort law" (*id.* ¶ 6) and that his claims in the federal action "involv[e] administrative aspects of asylum applications" (*id.* ¶ 7).

The facts in both actions are substantially the same. The plaintiff claims that the defendants withheld his EAD card and asylum documents, and improperly terminated the attorney-client relationship. *See, e.g.*, *Iacovacci v. Monticciolo*, No. 18-CV-7984, 2019 WL 2074584, at *4 (S.D.N.Y. May 9, 2019) (abstaining where the plaintiff brought new claims in the federal action and "the same factual allegations — in sum, the firing of Iacovacci for cause, the denial of his right to seek profits owed to him under the LLC Agreements, and the allegedly fraudulent activities of Monticciolo and Callahan — underlie the two complaints"); *Pike Co.,*

*Inc.*, 284 F. Supp. 3d at 387 (finding parallelism and retaining federal jurisdiction where the claims in the state and federal actions were different, but "[t]he main issue in [the federal] case — the rights and obligations of Plaintiff and Defendant under the [contract] — [wa]s already the subject of the State Action"); *Abe v. New York Univ.*, No. 14-CV-9323, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (finding claims substantially similar and abstaining when claims brought only in federal court "center[ed] around the same series of events" as the state court claims and "involve[d] essentially the same issues of law").  Although the plaintiff brings different claims in the federal action, "[m]erely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit.'" *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362–63 (2d Cir. 1985); *see also Ferolito v. Menashi*, 918 F. Supp. 2d 136, 142 (E.D.N.Y. 2013) ("Notwithstanding Ferolito's arguments, the fact that a new theory of liability is asserted in the Federal Action does not sufficiently differentiate the Federal Action from the Derivative Action.").  That the plaintiff seeks different relief in this Court does not preclude a finding that the cases are parallel.  *See, e.g.*, *Zeppelin Sys. USA, Inc. v. Pyrolyx USA Indiana, LLC*, No. 19-CV-11222, 2020 WL 1082774, at *6 (S.D.N.Y. Mar. 5, 2020) ("Even though Plaintiff seeks additional sums, as well as injunctive relief, in this court, the underlying events for both this action and enforcement of the mechanic's lien are identical and the resolution of both actions depend on the same questions of breach of contract."); *Stahl York Ave. Co., LLC v. City of New York*, No. 14-CV-7665, 2015 WL 2445071, at *9 (S.D.N.Y. May 21, 2015) (even though the "forms of relief sought by plaintiff in this case and the state action" were not "perfectly coextensive" where the plaintiff sought money damages in federal court in addition to injunctive

8

and declaratory relief, "the cases are undoubtedly parallel for the purposes of the *Colorado River* abstention doctrine"), *aff'd*, 641 F. App'x 68 (2d Cir. 2016).

## II. *Colorado River* Factors

Having found that the federal and state actions are parallel, the Court weighs six factors to determine if abstention is appropriate under *Colorado River*:

> (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*U.S. Bank Nat'l Ass'n as Trustee Bank of Am., N.A.*, 804 F. App'x at 107 (citing *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)). The Court assesses these factors "with the balance weighted heavily in favor of the exercise of jurisdiction," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (*Moses*), 460 U.S. 1, 16 (1983), and "with the burden of persuasion resting on the party opposing the exercise of federal jurisdiction." *Arkwright-Bos. Mfrs. Mut. Ins. Co.*, 762 F.2d at 210. "Where a Colorado River factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (quotation marks omitted). "[The Court's] task . . . is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses*, 460 U.S. at 25–26.

### a. Assumption of Jurisdiction Over Res or Property

First, the Court considers whether the federal or state actions assumed jurisdiction over any "res or property." *Moses*, 460 U.S. at 19.

Neither party contends that this action involves jurisdiction over property. "[T]he absence of a res 'point[s] toward exercise of federal jurisdiction.'" *Village of Westfield v.*

9

*Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (citing *DeCisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)). Accordingly, the first factor weighs in favor of the federal forum. *Village of Westfield*, 170 F.3d at 122.

### b. Inconvenience of the Federal Forum

The second factor — whether "the federal forum [is] any less convenient to the parties than the state forum," *Moses*, 460 U.S. at 19 — also favors the federal forum. The parties do not dispute that the forums are equally convenient: the courts are both in the Eastern District of New York. *See Norfolk S. Ry. Co. v. Philadelphia Indem. Ins. Co.*, No. 23-CV-00119, 2024 WL 22698, at *4 (W.D.N.Y. Jan. 2, 2024) (finding the second factor weighed against abstention where "the forum for the state action and the instant action are essentially the same, as both courts sit in Western New York"). "[W]here the federal court is just as convenient as the state court, that factor favors retention of the case in federal court." *Village of Westfield*, 170 F.3d at 122.

### c. Avoidance of Piecemeal Litigation

The third factor — "the danger of piecemeal litigation" — is the "paramount" consideration. *Moses*, 460 U.S. at 19.

The defendants argue that the similarities in the facts, parties, and damages between the two cases would result in duplicative efforts and inconsistent outcomes. (ECF No. 11-2 at 14–15.) The plaintiff responds that there is minimal risk of duplicative rulings because "[t]he issues, time frames, and legal theories" before the state court "are sufficiently different." (ECF No. 12 ¶ 24.)

"[T]he primary context in which [the Second Circuit has] affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel."

10

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 524 (2d Cir. 2001). "[B]ecause 'any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to *Colorado River* would be the rule, not the exception, in cases involving parallel proceedings in state and federal court.'" *Fernandez v. City of New York*, No. 17-CV-2431, 2017 WL 2894144, at *3 (S.D.N.Y. July 7, 2017) (quoting *Dalzell Mgmt. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 60 (S.D.N.Y. 2013)).

As explained above, the federal and state actions are based on the same facts. However, "[b]ecause the [two] proceedings all involve the same dispute between the same two parties, a decision in one proceeding would generally have preclusive effect in the other [], which significantly reduces any concern about piecemeal litigation." *FaZe Clan Inc. v. Tenney*, 407 F. Supp. 3d 440, 443 (S.D.N.Y. 2019); *see also Niagara Mohawk Power Corp.*, 673 F.3d at 102 (finding the third factor weighs in favor of the federal forum where the "claims are straightforward, and the New York state courts appear unlikely to decide them anytime soon"); *TD Bank, N.A. v. 202-4 West 23rd Street Corp.*, No. 24-CV-930, 2024 WL 5168360, at *4 (S.D.N.Y. Dec. 19, 2024) (finding the third factor weighs in favor of the federal forum because "Chelsea Hotel has failed to demonstrate how principles of res judicata and/or collateral estoppel would fail to prevent the possibility of inconsistent outcomes.").

Thus, the third factor weighs in favor of the federal forum. *Niagara Mohawk Power Corp.*, 673 F.3d at 102.

d. **Relative Advancement of Proceedings**

The fourth factor is the relative progress in the federal and state actions, and when each action began. *See Moses*, 460 U.S. at 21.

11

The defendants point out that the state action has progressed further; discovery is nearly completed and the defendants' motion to dismiss is pending. (ECF No. 11-2 at 15.) The plaintiff argues that the federal action encompasses a different time frame and distinct legal issues, "making the timing of filing less relevant," and "is still in its early stages, allowing for efficient adjudication without duplicating efforts." (ECF No. 12 ¶ 25.)

Priority is "not measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses*, 460 U.S. at 21. Where "there have been extensive, if inconclusive, proceedings in the original action, including . . . discovery . . . and several interlocutory decisions in the state court[,]" while "[t]he federal suit, on the other hand . . . has not moved beyond the initial pleadings and the motion to dismiss . . . , it hardly seems wise to permit plaintiff to start anew in federal court." *Telesco*, 765 F.2d at 363.

The plaintiff initiated the federal action more than a year after he brought the state action. Discovery in that case is almost done, including the plaintiff's deposition. The state court has resolved one of the plaintiff's motions to amend the complaint, and is considering the defendants' motion to dismiss and the plaintiff's second motion to amend the complaint. On January 10, 2025, the parties were to confirm whether discovery is completed and the case is ready for trial.

By contrast, the federal action is only seven months old, and there has been no discovery. Nevertheless, "[t]his Court sees no reason why much of the State Action discovery cannot simply be reproduced in this action[.]" *Iacovacci*, 437 F. Supp. 3d at 378; *see also Millennium Drilling Co., Inc. v. Prochaska*, No. 14-CV-1985, 2014 WL 6491531, at *5 (S.D.N.Y. Nov. 18, 2014) (finding the fourth factor favored abstention where "over 100,000 pages of discovery ha[d] exchanged hands" and a trial date had been set in the state action and the federal action "ha[d]

12

not progressed beyond the pleading stage"); *JPMorgan Chase Bank, N.A.*, 2024 WL 709068, at *7 (finding the fourth factor weighed in favor of abstention where the plaintiff filed the federal action a year after it filed the state action, discovery had commenced in the state action, the plaintiff produced several thousand pages of documents, the state court "decided multiple motions and conducted a two-day evidentiary hearing," and the federal court was considering a motion to dismiss and partial summary judgment filed with the complaint).

Accordingly, the fourth factor "only slightly favors" the state forum. *Iacovacci*, 437 F. Supp. 3d at 378.

### e. Whether State or Federal Law Supplies the Rule of Decision

The fifth factor is whether state or federal law "provides the rule of decision on the merits." *Moses*, 460 U.S. at 23. The defendants contend that there are no federal claims and the state law issues are not complex. (ECF No. 11-2 at 15.) According to the plaintiff, the federal court is "more appropriate" because his claims arise "in the context of federal immigration law." (ECF No. 12 ¶ 26.)

"[T]he presence of federal issues strongly advises exercising federal jurisdiction." *Village of Westfield*, 170 F.3d at 124. However, "the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Id.*; *see also Arkwright–Boston Mfrs. Mur. Ins. Co.*, 762 F.2d at 211 (noting "[a]s all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction.").

The plaintiff's claims — breach of contract, breach of fiduciary duty, and negligence — are state law claims, not federal claims. The plaintiff is not making any claim about the enforcement or legality of asylum documents, and state courts are "well-equipped" to review immigration documents. *Pavlenco v. Pearsall*, No. 13-CV-1953, 2013 WL 6198299, at *3 (E.D.N.Y. Nov. 27, 2013) (finding the fifth factor weighed in favor of staying the case under

13

*Colorado River* in light of previously filed divorce proceedings where, although the issue of the enforceability of "an I-864 support affidavit involves federal law, it is an issue that the state court is well-equipped to address" in the divorce proceedings). Even though the underlying documents in this case involve asylum law, it is state law that "provides the rule of decision on the merits." *Moses*, 460 U.S. at 23; *see, e.g.*, *CVR Energy, Inc.*, 2014 WL 7399040, at *5 (finding the fifth factor to moderately favor abstention where "there is no dispute that state law provides the rule of decision, but as this case involves a run-of-the-mill malpractice claim, there are no 'novel or particularly complex' legal issues at hand."); *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 595 (S.D.N.Y. 2006) (finding the fifth factor to slightly favor abstention where the proceedings involved only issues of state contract law).

Therefore, the fifth factor favors the state forum. *Village of Westfield*, 170 F.3d at 124.

f.  **Whether the State Proceeding Will Protect the Plaintiff's Rights**

The sixth factor — whether the state proceeding will protect the party seeking to invoke federal jurisdiction — "weighs in favor of abstention unless the party seeking federal court jurisdiction demonstrates that the state court 'cannot protect [that party's] procedural and substantive rights' or that 'the full range of remedies available to [the party] in this court would be [un]available in the [state] action.'" *JPMorgan Chase Bank, N.A.*, 2024 WL 709068, at *7 (citation omitted).

The defendants argue that "there is no doubt that the state action will adequately protect the plaintiff's procedural and substantive rights and provide a fair forum that will promptly resolve the parties' claims." (ECF No. 11-2 at 16.) The plaintiff does not explain why the state court case — which he initiated — cannot protect his rights; instead, he says that he is seeking "all asylum-related documents" in the federal case (ECF No. 12 ¶ 27), and that the federal court has "expertise" in asylum law, which is important because of his claim that the defendants

14

violated "administrative regulations governing asylum applications" (*id.* ¶ 29; *see also id.* ¶¶ 28, 31–32).

"[F]ederal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Village of Westfield*, 170 F.3d at 124 (quoting *Moses*, 460 U.S. at 28). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses*, 460 U.S. at 28.

The plaintiff's claims are New York state claims, which the state can obviously resolve. *See Ferolito*, 918 F. Supp. 2d 136, 144 (finding the sixth factor weighed in favor of abstention where "[t]he state court can adequately protect Ferolito's rights" and "Ferolito raises only state law claims against Menashi, all of which can be sufficiently litigated in, and resolved by, the state court."). Moreover, the plaintiff's "choice to sue first in state court also indicates the adequacy of the state court to protect [his] interests." *Pappas Harris Cap., LLC*, 2021 WL 3173429, at *12.

Accordingly, the sixth factor weighs in favor of the state forum.

g. **Analysis of the Factors**[3]

In sum, three of the six *Colorado River* factors weigh in favor of the federal forum, one factor weighs in favor of state forum, and two factors weigh slightly in favor of the state forum. Although it is a close call given the duplicative nature of the federal and state actions, the Court is bound by the "virtually unflagging obligation" to exercise jurisdiction. *Colorado River*, 424

---

[3] The defendants also maintain that the Court should consider the vexatious nature of the plaintiff's complaint in this Court. "[T]he Second Circuit has 'never formally cited this factor in its enumeration of the relevant considerations under *Colorado River*.'" *Iacovacci v. Brevet Holdings, LLC*, No. 18-CV-8048, 2019 WL 2992165, at *4 (S.D.N.Y. July 9, 2019) (citation omitted).

15

U.S. at 817. Accordingly, this case does not fall within the narrow exception that permits the Court to abstain from exercising its jurisdiction. "Although this approach will undoubtedly result in two courts considering the same action at the same time, case law from this Circuit interpreting Supreme Court precedent renders duplicative litigation, by itself, an insufficient basis for abstaining." *CVR Energy, Inc.*, 2014 WL 7399040, at *6. Accordingly, the defendants' motion to dismiss is denied.[4]

## CONCLUSION

For these reasons, the defendants' motion to dismiss is denied.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
January 13, 2025

---

[4] "Because the Court has concluded that *Colorado River* abstention is not appropriate here, [the] [d]efendants' alternative motion for a stay of these proceedings must also be denied." *CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, No. 14-CV-6566, 2014 WL 7399040, at *6 (S.D.N.Y. Dec. 29, 2014); *see Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 77 (2d Cir. 1996) ("There is no difference between a stay and a dismissal for purposes of the *Colorado River* doctrine.").